UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KARLA DAVIS,

        Petitioner,

vs.                                                    Case No. 3:21-cv-1030-BJD-LLL

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

        Respondents.

_____

## **ORDER**

## I.  **STATUS**

Petitioner Karla Davis filed her Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition) (Doc. 1), pursuant to the mailbox rule on November 5, 2019, in the United States District Court Northern District of Florida, Tallahassee Division (Northern District of Florida).[1] After the filing of a response and reply, the Northern District of Florida transferred the case to this Court (Docs. 16 & 17) on October 7, 2021. Petitioner is challenging a state court (Duval County) conviction for second

---

[1] In this Opinion, the Court references the docket and page numbers assigned by the electronic filing system.

degree murder.    She raises twenty-four grounds in the Petition.
Respondents filed an Answer in Response to Order to Show Cause on Petition
for Writ of Habeas Corpus (Response) (Doc. 10) and Exhibits (Doc. 10).
Petitioner filed Petitioner's Response to State's Reply (Doc. 15).  See Order
(Doc. 12).

The Court concludes no evidentiary proceedings are required in this
Court.  The pertinent facts are fully developed in the record, or the record
otherwise precludes habeas relief; therefore, the Court can adequately assess
the claims without any further factual development.  Turner v. Crosby, 339
F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

## II.   HABEAS REVIEW

Federal courts are authorized to grant habeas relief to a state prisoner
"only on the ground that he is in custody in violation of the Constitution or
laws or treaties of the United States."  Lee v. GDCP Warden, 987 F.3d 1007,
1017 (11th Cir.) (quoting 28 U.S.C. § 2254), cert. denied, 142 S. Ct. 599 (2021).
For issues previously decided by a state court on the merits, this Court must
review the underlying state-court decision under the Antiterrorism and
Effective Death Penalty Act of 1996 (AEDPA).   In doing so, a federal district
court must employ a very deferential framework.  Sealey v. Warden, Ga.
Diagnostic Prison, 954 F.3d 1338, 1354 (11th Cir. 2020) (citation omitted)

(acknowledging the deferential framework of AEDPA for evaluating issues previously decided in state court), <u>cert. denied</u>, 141 S. Ct. 2469 (2021); <u>Shoop v. Hill</u>, 139 S. Ct. 504, 506 (2019) (per curiam) (recognizing AEDPA imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases").

Thus, "[u]nder AEDPA, a court cannot grant relief unless the state court's decision on the merits was 'contrary to, or involved an unreasonable application of,' Supreme Court precedent, or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" <u>McKiver v. Sec'y, Fla. Dep't of Corr.</u>, 991 F.3d 1357, 1364 (11th Cir.) (citing 28 U.S.C. § 2254(d)(1)-(2)), <u>cert. denied</u>, 142 S. Ct. 441 (2021).   The Eleventh Circuit instructs:

> A state court's decision is "contrary to" clearly established federal law if the state court either reaches a conclusion opposite to the Supreme Court of the United States on a question of law or reaches a different outcome than the Supreme Court in a case with "materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle" from Supreme Court precedents "but unreasonably applies that principle to the facts of the prisoner's case." <u>Id</u>. at 413, 120 S. Ct. 1495.

Lee, 987 F.3d at 1017-18.   Therefore, habeas relief is limited to those occasions where the state court's determinations are unreasonable, that is, if no fairminded jurist could agree with them.   McKiver, 991 F.3d at 1364.

This is a high hurdle, not easily surmounted.   If the state court applied clearly established federal law to reasonably determined facts when determining a claim on its merits, "a federal habeas court may not disturb the state court's decision unless its error lies 'beyond any possibility for fairminded disagreement.'"   Shinn v. Kayer, 141 S. Ct. 517, 520 (2020) (per curiam) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).   Also, a state court's finding of fact, whether a state trial court or appellate court, is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1).   "The state court's factual determinations are presumed correct, absent clear and convincing evidence to the contrary."   Sealey, 954 F.3d at 1354 (quoting 28 U.S.C. § 2254(e)(1)).   See Hayes v. Sec'y, Fla. Dep't of Corr., 10 F.4th 1203, 1220 (11th Cir. 2021) (Newsome, Circuit Judge, concurring) (recognizing the universal requirement, applicable to all federal habeas proceedings of state prisoners, set forth in 28 U.S.C. § 2254(e)(1)).   This presumption of correctness, however, applies only to findings of fact, not mixed determinations of law and fact. Brannan v. GDCP Warden, 541 F. App'x 901, 903-904 (11th Cir. 2013) (per curiam) (acknowledging the distinction between a pure question of fact from a

4

mixed question of law and fact), cert. denied, 573 U.S. 906 (2014). Furthermore, the second prong of § 2254(d), requires this Court to "accord the state trial court [determination of the facts] substantial deference." Dallas v. Warden, 964 F.3d 1285, 1302 (11th Cir. 2020) (quoting Brumfield v. Cain, 576 U.S. 305, 314 (2015)), cert. denied, 142 S. Ct. 124 (2021).  As such, a federal district court may not supersede a state court's determination simply because reasonable minds may disagree about the finding.  Id. (quotation and citation omitted).

Finally, where there has been one reasoned state court judgment rejecting a federal claim followed by an unexplained order upholding that judgment, federal habeas courts employ a "look through" presumption: "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) (Wilson).

### III.   INEFFECTIVE ASSISTANCE OF COUNSEL

The two-part Strickland [2] standard governs claims of ineffective assistance of counsel.  Knight v. Fla. Dep't of Corr., 958 F.3d 1035, 1038 (11th

---

2 Strickland v. Washington, 466 U.S. 668 (1984).

Cir. 2020), cert. denied, 141 S. Ct. 2471 (2021).   See Freeman v. Comm'r, Ala. Dep't of Corr., 46 F.4th 1193, 1220 (11th Cir. 2022) ("In an ineffective assistance of counsel claim, § 22543(d)'s terms are judged by the standard set forth in Strickland v. Washington.").   Pursuant to this standard, a defendant must show: (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense.   Strickland, 466 U.S. at 687.   A district court need not address both prongs if a petitioner makes an insufficient showing on one.   Fifield v. Sec'y, Dep't of Corr., 849 F. App'x 829, 833 (11th Cir. 2021) (per curiam) (relying on Strickland), cert. denied, 142 S. Ct. 788 (2022).

To prevail, a petitioner must successfully show her counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" as well as show "the deficient performance prejudiced the defendant, depriving [her] of a 'fair trial, a trial whose result is reliable.'"   Raheem v. GDCP Warden, 995 F.3d 895, 908 (11th Cir. 2021) (quoting Strickland, 466 U.S. at 687), cert. denied, 142 S. Ct. 1234 (2022).   Additionally, combining the deferential standard for judging the performance of counsel with the extra layer of deference that § 2254 provides, the resulting double deference "is doubly difficult for a petitioner to overcome[.]" Johnson v. Sec'y, DOC, 643 F.3d 907, 911 (2011).

"And to determine whether [Petitioner] is entitled to habeas relief[,]" this Court "must ask (1) whether the [state court] decisions were contrary to, or involved an unreasonable application of, clearly established Federal law, as determined' in Strickland, or (2) whether the . . . decisions were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Whatley v. Warden, Ga. Diagnostic & Classification Ctr., 927 F.3d 1150, 1175 (11th Cir. 2019) (citations and internal quotation marks omitted), cert. denied, 141 S. Ct. 1299 (2021). This Court must be ever mindful that a state court's decision must be given deference and latitude and therefore the AEDPA standard is, as a consequence, quite difficult to meet.

## IV.   EXHAUSTION AND PROCEDURAL DEFAULT

A habeas petitioner is first required to exhaust her remedies in state court. Freeman, 46 F.4th at 1216 (citations omitted). Indeed, the state courts must have had the first opportunity to hear the claim. Id. at 1216-17. Furthermore, this opportunity must be "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." Id. at 1216 (quoting Pruitt v. Jones, 348 F.3d 1355, 1359 (11th Cir. 2003)) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 845

7

(1999)).   This requires fair presentation of every issue to the state's highest court whether on direct appeal or on collateral review.   Id.

The doctrine of procedural default requires the following:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[3] supra, at 747-748, 111 S. Ct. 2546; Sykes,[4] supra, at 84-85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. ----, ----, 131 S. Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S.----, ----, 130 S. Ct. 612, 617-618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012).

---

3  Coleman v. Thompson, 501 U.S. 722 (1991).

4  Wainwright v. Sykes, 433 U.S. 72 (1977).

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted state court remedies.  Castille v. Peoples, 489 U.S. 346, 349 (1989); Rose v. Lundy, 455 U.S. 509 (1982).   A procedural default arises "when 'the petitioner fails to raise the [federal] claim in state court and it is clear from state law that any future attempts at exhaustion would be futile.'"  Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 908 n.9 (11th Cir. 2009) (quoting Zeigler v. Crosby, 345 F.3d 1300, 1304 (11th Cir. 2003)), cert. denied, 558 U.S. 1151 (2010).

There are, however, allowable exceptions to the procedural default doctrine.   "To overcome procedural default, the prisoner must demonstrate 'cause' to excuse the procedural defect and 'actual prejudice' if the federal court were to decline to hear his claim."  Shinn v. Ramirez, 142 S. Ct. 1718, 1728 (2022) (citing Coleman, 501 U.S. at 750).   To demonstrate cause, a petitioner must show some objective factor external to the defense impeded his effort to properly raise the claim in state court.  Wright v. Hopper, 169 F.3d 695, 703 (11th Cir.), cert. denied, 528 U.S. 934 (1999).   If cause is established, a petitioner must demonstrate prejudice.   To demonstrate prejudice, a petitioner must show "there is at least a reasonable probability that the result of the proceeding would have been different had the constitutional violation not occurred."  Owen, 568 F.3d at 908.

9

Alternatively, a petitioner may obtain review of a procedurally barred claim if he satisfies the actual innocence "gateway" established in <u>Schlup v. Delo</u>, 513 U.S. 298 (1995).   The gateway exception is meant to prevent a constitutional error at trial from causing a miscarriage of justice and conviction of the actually innocent.   <u>Kuenzel v. Comm'r, Ala. Dep't of Corr.</u>, 690 F.3d 1311, 1314 (11th Cir. 2012) (per curiam) (quoting <u>Schlup</u>, 513 U.S. at 324), <u>cert. denied</u>, 569 U.S. 1004 (2013).

Respondents contend Petitioner has procedurally defaulted grounds 3, 5, 11, and 15-24.   <u>See</u> Response at 14-15, 34-38, 44-45, 62, 71, 74, 76, 78-79, 80-81, 83, 85, 88, 90, 92.   Upon review of the record, the Court is convinced that Petitioner has procedurally defaulted grounds 3, 5, 11, and 15-24.   She raised these claims in a Rule 3.850 motion.    (Doc. 10-15 at 5-52).   An evidentiary hearing was held on grounds 2 and 4 of the motion.   <u>Id</u>. at 356-400. Thereafter, the trial court denied the motion in its entirety.   <u>Id</u>. at 68-355. Although Petitioner appealed, she raised only ten claims of error concerning the court's rulings on grounds 1, 2, 4, 6, 7, 8, 9, 10, 12, 13, and 14. (Doc. 10-16). She therefore abandoned the remaining claims that were not briefed.   Fla. R. App. P. 9.141.[5]

---

5 Exhaustion requires not only the filing of a Rule 3.850 motion, but an appeal of its denial. <u>Leonard v. Wainwright</u>, 601 F.2d 807, 808 (5th Cir. 1979) (per curiam).

In order to exhaust all state-court remedies, a state prisoner must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process, including review by the state court of last resort, even if review is discretionary.  <u>Pruitt v. Jones</u>, 348 F.3d 1355, 1358-59 (11th Cir. 2003), <u>cert. denied</u>, 543 U.S. 838 (2004).  <u>See</u> <u>Clark v. Comm., Ala. Dep't of Corr.</u>, 988 F.3d 1326, 1329 (11th Cir. 2021) (same), <u>cert. denied</u> 142 S. Ct. 1134 (2022).  Here, Petitioner failed to brief grounds 3, 5, 11, and 15-24 on appeal of the denial of the Rule 3.850 motion.  Therefore, she abandoned her claims by failing to address the claims in her appellate brief.

An explanation is in order.  In Florida, an appeal from a postconviction proceeding for which an evidentiary hearing was held requires briefs, and an appellant's failure to brief an issue on postconviction appeal constitutes abandonment of that issue.  Fla. R. App. P. 9.141(b)(2), (3) (providing that "[b]riefs are not required" when a postconviction court rules on a motion without holding an evidentiary hearing, but that "briefs <u>shall</u> be served" when an appeal follows a grant or denial **after an evidentiary hearing was held on at least one claim** (emphasis added)).  <u>See</u> <u>Hammond v. State</u>, 34 So. 3d 58, 59 (Fla. 4th DCA 2010) (per curiam) (in a case with a postconviction evidentiary hearing held on only one issue with summary denial of the other

issues, claims presented without argument on appeal are waived).   See also
Rogers v. Sec'y, Dep't of Corr., No. 8:06-CV-1365-T-30TGW, 2010 WL 668261,
at *53 (M.D. Fla. Feb. 19, 2010) (not reported in F.Supp.2d) (finding petitioner
procedurally defaulted his claim because he received an evidentiary hearing
on his postconviction motion but failed to brief the particular claim).[6]   Indeed,
"[w]hen a Florida appellant does not brief an issue he wants the appellate court
to review, he has not presented that issue to the state's highest court and,
therefore, may not seek federal habeas review of the claim."   Frye v. Sec'y,
Dep't of Corr., No. 5:19-cv-311-BJD-PRL, 2022 WL 4133121, at *19 (M.D. Fla.
Sept. 12, 2022).

In short, Petitioner did not fairly present her federal constitutional
claims to the state courts by failing to brief them.   Any further attempts to
seek post-conviction relief in the state courts on these grounds will be
unavailing.   As such, Petitioner is procedurally barred from raising grounds
3, 5, 11, and 15-24.   As a result, she must demonstrate cause and prejudice.
Upon review, this Court concludes she has failed to show cause and prejudice.

---

[6] The Court finds the reasoning of Rogers persuasive on this point.   See McNamara v. Gov't
Emp. Ins. Co., 30 F.4th 1055, 1060-61 (11th Cir. 2022) (reiterating that unpublished opinions
may be cited as persuasive authority but are not binding precedent.   See Rule 32.1, Fed. R.
App. P.   In this opinion, the Court finds other unpublished decisions persuasive on various
points and references them as persuasive authority, not as binding precedent.

She has also failed to show that failure to address grounds 3, 5, 11, and 15-24 on the merits would result in a fundamental miscarriage of justice. This Court finds this is not an extraordinary case as Petitioner has not made a showing of actual innocence rather than mere legal innocence.

After due consideration, the Court finds grounds 3, 5, 11, and 15-24 are procedurally defaulted and the fundamental miscarriage of justice exception is inapplicable. Petitioner's procedural default bars this Court's review of grounds 3, 5, 11, and 15-24.

## V.  REMAINING GROUNDS

The remaining grounds are: (1) ineffective assistance of counsel for failure to invoke statutory immunity and file a pretrial motion to dismiss under Rule 3.190, Fla. R. Cr. P.; (2) ineffective assistance of counsel for failure to conduct a reasonable investigation for a viable defense; (4) ineffective assistance of counsel for failure to present expert evidence on post-traumatic stress disorder (PTSD); (6) ineffective assistance of counsel for failure to include all of the elements of the lesser included offenses in the jury instructions; (7) ineffective assistance of counsel for failure to object to misleading comments in rebuttal argument relating to instructions on manslaughter; (8) ineffective assistance of counsel for failure to make an inquiry as to whether the violation of the confidentiality rules would impact

the defendant; (9) ineffective assistance of counsel for failure to make an inquiry as to whether the violation of the discovery rule would impact the defendant; (10) ineffective assistance of counsel for failure to file a motion to disqualify the judge under Rule 2.160; (12) ineffective assistance of counsel for failure to make an inquiry as to whether the negligent conduct of the Florida Department of Law Enforcement (FDLE) during the criminal investigation would impact the defendant; (13) ineffective assistance of counsel for failure to present proof to indicate a probable likelihood of tampering and inquire as to whether the negligent conduct of the police investigation would impact the defendant; and (14) ineffective assistance of counsel for failure to file a motion in limine to exclude tampered evidence.

## A.   Ground One: ineffective assistance of counsel for failure to invoke statutory immunity and file a pretrial motion to dismiss under Rule 3.190, Fla. R. Cr. P.

In ground one, Petitioner claims her counsel was ineffective for failure to invoke statutory immunity and file a pretrial motion to dismiss.   Petition at 5.   In her supporting facts, Petitioner claims she acted in self-defense, but counsel failed to seek immunity from prosecution under the Stand Your Ground law.   Id.

Petitioner exhausted ground one by raising it in her Rule 3.850 motion for postconviction relief and on appeal to the First District Court of Appeal (1st DCA). (Doc. 10-15 at 6-8); (Doc. 10-16 at 8-10). The 1st DCA per curiam affirmed the decision of the trial court denying relief. (Doc. 10-18). The claim is due to be denied as the state court's adjudication of the claim is not contrary to or an unreasonable application of Strickland or based on an unreasonable determination of the facts. As such, Petitioner is not entitled to habeas relief on ground one.

In the trial court's Order Denying Defendant's Motion for Postconviction Relief (Doc. 10-15 at 70-72), the court found that "due to the evidence against Defendant, including evidence of her decision to arm herself and pursue the victim, she would not be able to meet her burden on a stand your ground motion." Id. at 72. As such, counsel could not be deemed ineffective for failure to file a meritless motion or raise a meritless argument. After reviewing the facts contained in the record and deeming the case law definitive, the court denied postconviction relief. Id. at 71-72. The 1st DCA affirmed.

In undertaking its review, the state court properly applied the two-pronged Strickland standard of review. Id. at 69-70. Therefore, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1). The next inquiry is whether the state court unreasonably applied that principle to the

facts or premised its adjudication of the claim on an unreasonable determination of the facts.   Under the circumstances, the Court is not convinced that there was either an unreasonable application or an unreasonable determination of the facts.

In denying this ground, the trial court relied on the substantial evidence against Petitioner.   (Doc. 10-15 at 71-72).   In doing so, the court did not make an unreasonable determination of the facts.   Thus, these findings of fact are entitled to the presumption of correctness.   28 U.S.C. § 2254(e)(1).   Petitioner has not presented clear and convincing evidence to the contrary; therefore, the presumption of correctness remains.

After due consideration, the Court concludes that the state court did not unreasonably apply <u>Strickland</u> to the facts before it.   The court applied clearly established law to reasonably determined facts.   Defense counsel would not have prevailed on the proposed argument or motion.   A defense attorney need not make a meritless motion that would not have obtained relief.   <u>Brewster v. Hetzel</u>, 913 F.3d 1042, 1056 (11th Cir. 2019).   In failing to satisfy the performance prong of <u>Strickland</u>, Petitioner did not and will not prevail on her claim of ineffective assistance of trial counsel.

The 1st DCA affirmed the decision of the trial court applying the <u>Strickland</u> standard of review and denying Petitioner's claim of ineffective

assistance of counsel.   The Court finds the state court's determination is consistent with federal precedent.   Although unexplained, the 1st DCA's decision is entitled to AEDPA deference.   Applying the look-through presumption set forth in <u>Wilson</u>, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law. Thus, ground one is due to be denied as the state court's adjudication of the claim is not contrary to or an unreasonable application of <u>Strickland</u> and its progeny or based on an unreasonable determination of the facts.   As such, the Court finds Petitioner is not entitled to habeas relief on ground one.

**B.   Ground Two: ineffective assistance of counsel for failure to conduct a reasonable investigation for a viable defense.**

In her supporting facts, Petitioner claims counsel failed to investigate the facts surrounding the case in order to prove self-defense.   Petition at 6. Petitioner exhausted ground two by raising it in her Rule 3.850 motion for postconviction relief and on appeal to the 1st DCA.   (Doc. 10-15 at 8-11); (Doc. 10-16 at 11-15).   The trial court conducted an evidentiary hearing on grounds two and four of the postconviction motion.   (Doc. 10-15 at 356-400). Thereafter, the court denied relief on ground two.   <u>Id</u>. at 72-74.   The 1st DCA per curiam affirmed the decision of the trial court.   (Doc. 10-18).   Upon review, ground two is due to be denied as the state court's adjudication of the

17

claim is not contrary to or an unreasonable application of <u>Strickland</u> or based on an unreasonable determination of the facts.

Both defense counsel and Petitioner testified at the evidentiary hearing. The court found defense counsel's testimony to be more credible than that of Petitioner ("This Court finds counsel's testimony more credible and more compelling than the testimony of Defendant."). (Doc. 10-15 at 74). The court relied on the following factors in denying relief. Trial counsel attested that self-defense was not a theory adopted by the defense because Petitioner never provided a set of facts to counsel supporting such a defense. <u>Id</u>. at 73. Defense counsel testified that Petitioner never provided any information concerning a Ms. Bailey or her boyfriend Eric. <u>Id</u>. Defense counsel attested that Petitioner repeatedly and adamantly refused to testify and "a theory of self-defense would have had to come from Defendant[.]" <u>Id</u>.

The trial court also relied significantly on the fact that at trial, Petitioner affirmed, on the record, that she was satisfied with counsel's investigation, representation, and strategy. <u>Id</u>. at 74. Indeed, the record shows, Petitioner advised the court she agreed with defense counsel's strategy and the decision to call no witnesses for the defense, and that the investigation had been completed by counsel and counsel had done everything Petitioner asked counsel to do to Petitioner's satisfaction. (Doc. 10-8 at 364-65). Finally, she

18

announced she was satisfied with counsel's strategy up to that point: the close of evidence.  Id. at 365.

After finding defense counsel's testimony more credible and more compelling, the court concluded that the investigation and strategy were reasonable, within the bounds of reasonably effective counsel.  (Doc. 10-15 at 74).  Initially, it should be noted, this Court has "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."  Consalvo v. Sec'y for Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011) (per curiam) (internal quotation marks omitted) (quoting Marshall v. Lonberger, 459 U.S. 422, 434 (1983)), cert. denied, 568 U.S. 849 (2012)).  The trial court observed both Petitioner's and defense counsel's testimony and found counsel's testimony more credible; therefore, this Court declines to make any redetermination, as it must.

Again, the threshold standard of Strickland has not been met.  The reviewing court applied the Strickland two-pronged standard and found Petitioner had failed to establish any deficient performance by counsel as her performance was clearly within the wide range of reasonably competent counsel.

The state court's adjudication of the claim is not contrary to or an unreasonable application of Strickland and its progeny or based on an

unreasonable determination of the facts.   Petitioner has not shown that the state court unreasonably applied <u>Strickland</u> or unreasonably determined the facts.   The trial court was objectively reasonable in its <u>Strickland</u> inquiry. The 1st DCA affirmed.   Applying the look through presumption described in <u>Wilson</u>, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.

As the threshold standard of <u>Strickland</u> has not been met, Petitioner has failed to demonstrate that the state court proceeding was fundamentally unfair and her counsel ineffective.   Thus, she has failed to demonstrate a Sixth Amendment violation under the Constitution.   The Court finds Petitioner is not entitled to habeas relief on ground two.

## C.   Ground Four: ineffective assistance of counsel for failure to present expert evidence on PTSD.

Petitioner submits that counsel's failure to present expert evidence on PTSD meant there was an incomplete picture of Petitioner's mental health history.   Petition at 8.   As noted by the trial court, Petitioner argued that had such testimony been offered, the jury would have considered Petitioner's mindset and believed her to be acting in self-defense, and therefore not guilty of the charged offense.   (Doc. 10-15 at 75).

20

Petitioner exhausted ground four by raising it in her Rule 3.850 motion for postconviction relief and on appeal to the 1st DCA. (Doc. 10-15 at 13-15); (Doc. 10-16 at 15-17). The trial court conducted an evidentiary hearing on ground four of the postconviction motion. (Doc. 10-15 at 356-400). Thereafter, the court denied relief on this ground. Id. at 75-76. The 1st DCA affirmed the decision of the trial court. (Doc. 10-18). Upon review, ground four is due to be denied as the state court's adjudication of the claim is not contrary to or an unreasonable application of Strickland or based on an unreasonable determination of the facts.

Again, the trial court relied on Petitioner's announcement at trial that she agreed with counsel's decision not to call witnesses. (Doc. 10-15 at 75). The court rejected Petitioner's attempt to go behind her testimony and claim there was additional evidence she wished counsel had presented at trial. Id. The trial court also found defense counsel's testimony at the evidentiary hearing more credible. Id. at 76. This Court declines to make any redetermination as the trial court observed both Petitioner and defense counsel's testimony and found trial counsel more credible.

Finally, defense counsel testified she never intended to present a defense of self-defense as the facts, as related by Petitioner to counsel, did not support a theory of self-defense. Id. Although defense counsel contemplated

21

presenting Dr. Bloomfield's testimony if the doctor's examination had supported a claim of coercion by the police in obtaining Petitioner's statement to the detectives, after reviewing the second evaluation, counsel found Dr. Bloomfield's assessment unfavorable to the defense and inadmissible based on counsel's research.  Id.  As such, the court found counsel did not perform deficiently in this regard.  Id.

In failing to satisfy the performance prong of Strickland, Petitioner's claim of ineffective assistance of counsel will not prevail.   A defense attorney's decision as to whether to present witness testimony is a strategic one, left within counsel's domain.   Claflin v. Sec'y, Dep't of Corr., No. 6:09-cv-2055-Orl-31KRS, 2011 WL 280940, at *3 (M.D. Fla. Jan. 26, 2011) (not reported in F.Supp.2d).   Indeed, "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess."   Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir.) (citation omitted), cert. denied, 516 U.S. 856 (1995).   Giving the wide latitude allowed to counsel in making strategic decisions, especially after counsel has vetted the witness's testimony, the Court concludes counsel's performance did not fall outside the norm.   The decision not to call Dr. Bloomfield to present expert testimony on PTSD or rely on him as a defense witness after the doctor's second evaluation did not amount to deficient performance.

The Court finds the state court's determination is consistent with federal precedent.   Although unexplained, the 1st DCA's decision is entitled to AEDPA deference.   After applying the look-through presumption set forth in <u>Wilson</u>, the Court finds the state court's ruling is based on a reasonable determination of the facts and a reasonable application of <u>Strickland</u> and its progeny.   Thus, Petitioner is not entitled to habeas relief on ground four.

**D.   Ground Six: ineffective assistance of counsel for failure to include all of the elements of the lesser included offenses in the jury instructions.**

In support of this ground, Petitioner contends defense counsel "failed to have the justifiable use of force jury instruction included[.]" Petition at 10. Petitioner exhausted ground six by raising it in her Rule 3.850 motion for postconviction relief and on appeal to the 1st DCA.   (Doc. 10-15 at 17-18); (Doc. 10-16 at 17-19).   The trial court denied relief.   (Doc. 10-15 at 77-78).   The 1st DCA affirmed.   (Doc. 10-18).

Petitioner argues that an instruction concerning justifiable use of force should have been included in the court's instructions because Petitioner maintained she acted in self-defense out of fear for her life and counsel's performed ineffectively for failure to insist that this instruction be given and by allowing it to be removed without objection.   (Doc. 10-15 at 17).   The trial

court in rejecting this ground found, "there was no evidence to support this theory of defense." Id. at 77.   As a consequence, the trial court concluded counsel could not be deemed ineffective for allowing the instruction to be omitted as there was no evidence presented at trial supporting the defense. Id. at 78.   Moreover, the court found no reasonable probability the result of the proceeding would have been different even if the instruction had been given as no evidence was presented showing a justifiable use of force.   Id.

Of import, Petitioner did not admit the shooting at trial.   The defense presented at trial was Mr. Foster did the shooting.   Therefore, self-defense based on a justifiable use of force theory was inapplicable and properly waived by counsel as Petitioner did not admit the killing.

The Court finds the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland or based on an unreasonable determination of the facts.   Applying the look-through presumption set forth in Wilson, the Court finds the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.   Petitioner has failed to demonstrate that the state court unreasonably applied Strickland or unreasonably determined the facts.   Thus, the 1st DCA's decision, although unexplained, is entitled to AEDPA deference.   Petitioner is not entitled to habeas relief on ground six.

**E.   Ground Seven: ineffective assistance of counsel for failure to object to misleading comments in rebuttal argument relating to instructions on manslaughter.**

Petitioner contends that the prosecutor made improper comments on lesser included offenses.   Petition at 11.   Petitioner raised a comparable claim in her Rule 3.850 motion and on appeal to the 1st DCA.   (Doc. 10-15 at 18-20); (Doc. 10-16 at 19-20).   She complained the prosecutor told a "misleading story of manslaughter."   (Doc. 10-15 at 19).   The trial court denied relief.   Id. at 78-79.   The 1st DCA affirmed.   (Doc. 10-18).

The trial court, in addressing this ground, noted that before closing argument, the court instructed the jury: "what the attorneys say is not law and is not evidence."   (Doc. 10-15 at 78).   See (Doc. 10-8 at 406).   Instead, what the attorneys say in closing argument is "intended to aid you in understanding the case."   (Doc. 10-8 at 406).   As such, the court found, even if the prosecutor's story were considered improper with an objection made by counsel, "there is no reasonable probability the result of the proceeding would have been different as the jury was adequately instructed on manslaughter[.]" (Doc. 10-15 at 78).   The 1st DCA affirmed.

In pertinent part, the record demonstrates the court instructed:

To prove the crime of manslaughter, the State must prove the following two elements beyond a reasonable doubt:  One, Ian Klinedinst is dead; two Karla Davis intentionally committed an act or acts that caused the death of Ian Klinedinst.

The defendant cannot be guilty of manslaughter by committing a merely negligent act, or if the killing was either justifiable or excusable homicide.

Each of us has a duty to act reasonably towards others.   If there is a violation of that duty without any conscious intention to harm, that violation is negligence.

The killing of a human being is justifiable homicide and lawful if necessarily done while resisting an attempt to murder or commit a felony upon the defendant, or to commit a felony in the dwelling house in which the defendant was at the time of the killing.

The killing of a human being is excusable and therefore lawful under any one of the following circumstances:  One, when the killing is committed by accident and misfortune in doing any lawful act by lawful means, with usual ordinary caution and without any unlawfully [sic] intent; or two, when the killing occurs by accident and misfortune in the heat of passion, upon any sudden and sufficient provocation; or three, when the killing is committed by accident and misfortune resulting from a sudden combat, if a dangerous weapon is not used and the killing is not done in a cruel or unusual manner.

In order to convict of manslaughter by act, it is not necessary for the State to prove that the defendant had an intent to cause death, only an intent to commit an act that was not merely negligent, justified or excusable, and which caused death.

26

If you find that Karl Davis committed manslaughter, and you also find beyond a reasonable doubt that during the commission of the crime she carried, displayed, used, threatened to use or attempted to use a firearm, you should find her guilty of manslaughter with a firearm.

A firearm has been previously defined for you.

If you find that Karla Davis committed manslaughter, but you are not convinced beyond a reasonable doubt that she personally carried, displayed, used, threatened to use or attempted to use a weapon, then you should find her guilty of manslaughter.

(Doc. 10-8 at 484-86).

Assuming arguendo the prosecutor's example of manslaughter left out any elements, the court properly instructed the jury as to the required elements. Upon review, the court provided a complete instruction on manslaughter and told the jury to base its verdict on those instructions. Indeed, the court instructed the jury to follow the law as set out in the instructions and to decide the case upon the evidence that they have heard or seen and "these instructions." Id. at 491. Of course, the jury was further instructed that the verdict returned should be for the highest offense which has been proven beyond a reasonable doubt. Id. at 493. The jury returned a

verdict for murder in the second degree and found the defendant discharged a firearm causing death or great bodily harm.   Id. at 507.

Petitioner has failed to establish that the state court's decision denying her claim of ineffective assistance of counsel was contrary to or an unreasonable application of federal law.   Petitioner has not shown that the state court unreasonably determined the facts.   Finally, Petitioner has failed to show a reasonable probability exists that the outcome of the case would have been different if her counsel had given the assistance that Petitioner has alleged should have been provided.

The 1st DCA's decision, although unexplained, is entitled to AEDPA deference.   Under Wilson, applying the look through presumption described therein, the Court finds the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.   As such, the state court's adjudication of the claim is not contrary to or an unreasonable application of Strickland or based on an unreasonable determination of the facts.   Petitioner is not entitled to habeas relief on ground seven.

**F.   Ground Eight: ineffective assistance of counsel for failure to make an inquiry as to whether the violation of the confidentiality rules would impact the defendant.**

**Ground Nine: ineffective assistance of counsel for failure to make an inquiry as to whether the violation of the discovery rule would impact the defendant.**

In her supporting facts to ground eight, Petitioner states her counsel failed to object to the corrupted testimony of the state's witnesses.   Petition at 12.   Petitioner raised a comparable claim in her Rule 3.850 motion and on appeal to the 1st DCA.   (Doc. 10-15 at 20-22); (Doc. 10-16 at 20-21).   The trial court denied relief.   (Doc. 10-15 at 79-80).   The 1st DCA affirmed.   (Doc. 10-18).

In ground nine, Petitioner contends that a discovery violation affected her entire line of defense and counsel failed to raise this matter.   Petition at 13.   Petitioner raised a comparable claim in her Rule 3.850 motion and on appeal to the 1st DCA.   (Doc. 10-15 at 22-24); (Doc. 10-16 at 22-23).   The trial court denied relief.   (Doc. 10-15 at 79-80).   The 1st DCA affirmed.   (Doc. 10-18).

The trial court succinctly summarized Petitioner's confidentiality rule claim:

> Defendant maintains counsel should have inquired whether Defendant was impacted by the State's alleged violation of Rule 3-7.1 from the Rules Regulating the Florida Bar by providing information to State witnesses, Foster and Clay, and the State's

> alleged violation of discovery Rule 3.220 by failing to disclose Foster's statements. In essence, Defendant is arguing counsel should have objected to the witnesses' testimony because it "was not their own but was confidential information provided by the state and detectives" that encouraged them to testify differently.

(Doc. 10-15 at 79).

The record demonstrates that Foster changed his story over time. This was a matter addressed through cross-examination. Rule 3-7.1 concerns disciplinary proceedings of attorneys, not criminal trials; therefore, it is inapplicable to the trial process. (Doc. 10-15 at 79). As a consequence, there can be no ineffective assistance of counsel based on this rule of professional conduct.

To the extent Petitioner is claiming a discovery violation, there was none. The state listed both Foster and Clay as witnesses. Id. at 327. Defense counsel was well aware of Foster's evolving statements, as evinced by counsel's strong cross-examination of the witness. (Doc. 10-8 at 252-56, 261-62, 264-73, 276, 278-81). Additionally, defense counsel vigorously cross-examined Clay. Clay readily admitted, upon inquiry, that he described the perpetrator's vehicle as being a dark-colored, possibly black, SUV. (Doc. 10-7 at 432). He stated he could not identify the silver Chrysler 300. Id. at 433. Also, he

testified that in his 911 call he said there were four individuals in the SUV, not one.  <u>Id</u>. at 434-35.

The trial court denied postconviction relief, finding no evidence of a discovery violation and no prejudice due to counsel's vigorous cross-examination.  (Doc. 10-15 at 80).  Indeed, as noted by Respondent, lodging an objection to the testimony was not the appropriate step by counsel; instead, counsel, through brisk cross-examination properly brought out the inconsistencies in the testimonies and the influence of the state on the shifting stories.  <u>See</u> Response at 54.

Petitioner cannot satisfy the "contrary to" test as the state court rejected the claims of ineffective assistance of counsel based on <u>Strickland</u>.  28 U.S.C. § 2254(d)(1).  Without satisfying the two-pronged standard of <u>Strickland</u>, Petitioner cannot prevail on her claims of ineffective assistance of counsel.

In sum, the Court finds the state court's determination is consistent with federal precedent.  Although unexplained, the 1st DCA's decision affirming the trial court is entitled to AEDPA deference.  Applying the look-through presumption set forth in <u>Wilson</u>, the Court finds the state court's ruling is based on a reasonable determination of the facts and a reasonable application of <u>Strickland</u> and its progeny.  Therefore, Petitioner is not entitled to habeas relief on grounds eight and nine.

## G.   Ground Ten: ineffective assistance of counsel for failure to file a motion to disqualify the judge under Rule 2.160.

Petitioner bases this claim on her assertion that the judge punished Petitioner for denying guilt during an interview with the detectives and counsel was ineffective for failing to move to disqualify the judge for her actions.   Petition at 14.   In her Rule 3.850 motion and on appeal to the 1st DCA Petitioner raised a comparable claim.   (Doc. 10-15 at 24-29); (Doc. 10-16 at 23-26).   The trial court denied relief.   (Doc. 10-15 at 80-81).   The 1st DCA affirmed.   (Doc. 10-18).

The trial court, in denying postconviction relief, found that the court did not penalize Petitioner for denying guilt during the interview.   (Doc. 10-15 at 80).   Instead, the court found the trial court was addressing Petitioner's assertion at sentencing that mental illness curbed her ability to fully appreciate the wrongfulness of her action.   Id. at 80-81.   The trial court surmised that Petitioner's repeated denial of her involvement prior to her admission of culpability, "showed that Defendant understood what she did was wrong," countering Petitioner's assertion of diminished capacity to appreciate the wrongfulness of her actions.   Id. at 81.   Consequently, as noted in its decision, the court found this, and other stated reasons minimized mitigation and justified the harsher sentence.   Id.   Furthermore, the court opined that

even assuming a motion to disqualify had been filed, it would have properly been denied; therefore, counsel could not be deemed ineffective for failure to file a motion to disqualify the judge. <u>Id</u>. Moreover, the court found no reasonable probability the result of the proceeding would have been different without the consideration of the interrogation video. <u>Id</u>.

Finally, as to any contention of disparate treatment of co-defendants in sentencing, the court concluded there was no co-defendant as no one else was charged in the shooting of the victim. <u>Id</u>. Mr. Foster was charged for other actions, lesser offenses. <u>Id</u>. He was not alleged to have injured or murdered any person or charged with second degree murder. Therefore, counsel did not perform deficiently in this regard. <u>Id</u>.

At sentencing, the court explained its reasoning for imposing its sentence:

> There is no number of years that I can impose that would diminish the loss that has been experienced. I looked at the DVD in preparation for this trial, for the hearing that we ended up not having, and I looked at the DVD from the time you walked into the interview room until the time it concluded, which was a number of hours as I recall, and the person I see today is not the person that I saw in that video. I recognize that there were some challenges there as it related to the abuse of illegal and legal substances, as outlined in the records that have been presented before this Court, and I see a different person. You

look healthier, you sound healthier, so it has benefited you are great deal.

I have taken into great consideration the sexual abuse and mental abuse that resulted in your diagnosis and I have considered it greatly, and while I have considered it, it does not outweigh the aggravation in this case for these reasons.

I took notes during the statement that you gave to the police, that you denied it for a significant number of times. During that interview you denied any of your actions that evening, and it was quite a bit of time before you decided to tell them what actually took place and your involvement that night. That indicates to me that you knew what you did was wrong, and that you were trying to prevent from getting in trouble about it. So, it indicates to me that the mitigation that has been presented does not outweigh the aggravation.

. . . .

Having taken into consideration all of the evidence that has been presented before the Court, the argument of counsel, the presentence investigation report, I have noted that in this case you were a stranger to the victim, there was no prior conflict that took place before this incident, he was not doing anything illegal, he was not provoking you, and now a member of this community has lost his life, and that is aggravation to this Court.

(Doc. 10-9 at 68-70).

34

The court adjudicated Petitioner guilty of second-degree murder and sentenced her to life in prison with a 25-year minimum mandatory term.   Id. at 70.   This is a legal sentence under Florida law.

In essence, the state court found the mitigation evidence was not sufficient to overcome the severity of the crime nor was Petitioner so mentally ill that she could not appreciate that what she had done was wrong.   Her actions and statements during the interrogation showed that she was not suffering from delusions or hallucinations, and she knew she had done wrong, as she ultimately revealed what she had done after attempting to conceal or minimize her offense.   As such, the court deemed a life sentence was justified under the circumstances outlined above.

Petitioner satisfied neither the performance nor prejudice prong of Strickland.   Failure to meet either prong is fatal to her claim.   The 1st DCA affirmed.   The Court finds the state court's determination is consistent with federal precedent and is entitled to deference.   This is so even though the 1st DCA's decision is unexplained.   The Court applies the look-through presumption described in Wilson and concludes that the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.

In short, the state court's adjudication of ground ten is not contrary to or an unreasonable application of <u>Strickland</u> and its progeny or based on an unreasonable determination of the facts.   Therefore, ground ten is due to be denied.

## H.   Ground Twelve:   ineffective assistance of counsel for failure to make an inquiry as to whether negligent conduct of the FDLE during the criminal investigation would impact the defendant.

Petitioner complains the FDLE did not provide the projectiles to the crime lab for forensic testing and counsel failed to inquire as to the impact this omission would have on Petitioner's case.   Petition at 16.   Petitioner argued that had the fragments been examined, they would have evinced a ricocheted bullet and she would have been found not guilty.   In her Rule 3.850 motion and on appeal to the 1st DCA she raised a comparable claim.   (Doc. 10-15 at 30-32); (Doc. 10-16 at 27).   The trial court denied relief.   (Doc. 10-15 at 82-83).   The 1st DCA affirmed.   (Doc. 10-18).

Aurelian Nicolaescu, an associate medical examiner, testified he performed an autopsy on the victim, Ian Klinedinst.   (Doc. 10-8 at 350).   Dr. Nicolaescu determined the cause of death was a gunshot wound of the head.   <u>Id</u>.   The entrance wound was in the left eye.   <u>Id</u>. at 351-52.   He testified the bullet lacerated the eye, entered the skull through a bone, and the bullet

36

fragmented and dispersed into two lobes of the victim's brain.   Id. at 353.   Dr. Nicolaescu recovered the fragments.   Id.   At trial, the fragments were submitted into evidence.   Id. at 356.

Maysaa Farhat, a crime laboratory analyst for the FDLE, also testified. Id. at 317.   She did not testify as to the source of the bullet fragments or that the fragments matched any weapons used by other individuals during the incident.   Id. at 317-36.

In her closing argument, defense counsel addressed Dr. Nicolaescu's testimony.   She noted the projectile recovered from the victim was fragmented, "and because that projectile was fragmented it was not analyzed, and so it's unknown the caliber of projectile recovered, because it wasn't recovered intact, it was too fragmented."   (Doc. 10-8 at 457).   Defense counsel used the lack of assessment of the fragments to the defense's advantage, suggesting that the state failed to prove that the bullet that struck the victim came from Petitioner's firearm, a firearm that was never found.   This combined with the fact that there were multiple shooters and other recovered weapons and projectiles allowed defense counsel to reasonably argue that the state did not meet its burden in proving that Petitioner fired a gun and in doing so caused the death of the victim.   Id. at 463-64.

Initially, there is nothing in the record supporting Petitioner's assertion of negligent conduct on the part of the FDLE for failure to send over bullet fragments to the crime lab for analysis.   As such, there would be no reason for defense counsel to make an inquiry into the FDLE's conduct.   Furthermore questioning Ms. Farhat and Dr. Nicolaescu about the decision not to have the fragments analyzed would have been unfruitful as these witnesses could not testify as to the police's decision not to submit the fragments to the FDLE for testing.   Counsel cannot be deemed deficient in this regard.   Since there was no examination of the fragments, counsel did not perform deficiently for failing to inquire as to the nature of the fragments when Ms. Farhat was on the stand. As to Petitioner's assertion that the fragments were evidence of a ricochet, this contention is belied by the expert's testimony that the bullet fragmented after entering the victim's head through the eye, hitting bone, causing the fragmentation of the bullet, and dispersing the fragments into two lobes of the victim's brain.

The trial court denied Petitioner's claim of ineffective assistance of counsel.   (Doc. 10-15 at 83).   The trial court found, even assuming deficient performance on the part of counsel for failure to investigate why the fragments were not sent for examination by the FDLE, Petitioner failed to meet the prejudice prong of Strickland.   The court held: "[considering the evidence

38

presented as outlined in Ground One and the fact that the police only found two guns, neither of which were the gun Defendant allegedly used, this Court finds no reasonable probability the result of the proceeding would have been different even if the fragments had been provided to FDLE for analysis." Id. The 1st DCA affirmed.

Based on the record, apparently the fragments were too disintegrated for testing, but defense counsel used this to her advantage to stress the lack of evidence tying Petitioner to the shooting of the victim as multiple persons had firearms and shot that night.   Counsel's performance did not fall outside the wide range of reasonably professional assistance.   Even assuming deficient performance, Petitioner has not shown resulting prejudice as there is no reasonable probability that if defense counsel had made an inquiry as suggested by Petitioner, the result of the proceeding would have been different.

As there is no reasonable probability that the outcome of the case would have been different if defense counsel had taken the action suggested by Petitioner, Petitioner is not entitled to habeas relief on ground twelve.   The state court's decision is entitled to deference pursuant to AEDPA.   The ruling is based on a reasonable determination of the facts and a reasonable application of the law.   The 1st DCA's adjudication of the claim is not contrary

to or an unreasonable application of <u>Strickland</u> or based on an unreasonable determination of the facts.   As such, ground twelve is due to be denied.

**I.   Ground Thirteen:   ineffective assistance of counsel for failure to present proof to indicate a probable likelihood of tampering and inquire as to whether the negligent conduct of the police during the criminal investigation would impact the defendant.**

**Ground Fourteen:   ineffective assistance of counsel for failure to file a motion in limine to exclude tampered evidence.**

Petitioner contends counsel performed deficiently in violation of the Sixth Amendment based on her failure to contend the evidence had been compromised by the FDLE and undermined the integrity of the case.   Petition at 17-18.   In her Rule 3.850 motion and on appeal to the 1st DCA Petitioner raised comparable claims.   (Doc. 10-15 at 32-35); (Doc. 10-16 at 28-29). Petitioner noted Officer Bailey testified he turned the victim's car off which apparently had already been placed in park and Mr. Kershaw testified that when he returned to the scene he moved the victim's body.   Petitioner suggests that the evidence was tampered with, surmising the car and the body were moved further from the scene of the offense.   The trial court denied relief on both grounds.   (Doc. 10-15 at 83-84).   The 1st DCA affirmed.   (Doc. 10-18).

There was no evidence of the police tampering with the scene.   Mr. Kershaw readily admitted he moved the victim's body from the car in order to attempt to save him.   (Doc. 10-7 at 538-39).   Mr. Kershaw said the victim's car was still running when Mr. Kershaw arrived back at the scene of the initial shooting.   <u>Id</u>. at 538.   The police had not yet arrived at the scene.   No testimony was offered concerning who put the car in park, although Officer Bailey attested he turned the car off and it was already in park when he arrived.   <u>Id</u>. at 566.   There was no testimony that the car had been moved after the victim was shot or that the police moved the car.   Based on this record, if the car had been tampered with, it was not done by the police; therefore, there was no disruption to the chain of custody.   As such, there is no basis for counsel to argue to exclude the evidence because there was no evidence of tampering after the evidence came under the possession and control of the police.

Based on the above, counsel did not act deficiently in failing to present proof to indicate a probable likelihood of tampering and for failing to seek to exclude the evidence based on alleged tampering.   The trial court in denying postconviction relief found, "counsel cannot be deemed deficient for failing to file a meritless motion to exclude such evidence."   (Doc. 10-15 at 84).   The 1st DCA affirmed.

A defense attorney need not make a meritless motion that would not have obtained relief.   Brewster, 913 F.3d at 1056.   Here, there was no basis for counsel to claim tampering by the police, there was no evidence of negligent or intentional conduct by the police in this regard, and there would have been no merit to filing a motion to exclude the evidence.   In failing to satisfy the performance prong of Strickland, Petitioner cannot prevail on his claim of ineffective assistance of trial counsel.   Therefore, Petitioner is not entitled to relief on grounds thirteen and fourteen of the Petition.

The 1st DCA affirmed the decision of the trial court applying the Strickland standard of review and denying Petitioner's claims of ineffective assistance of counsel.   The Court finds the state court's decision consistent with federal precedent.   Although unexplained, the 1st DCA's decision is entitled to AEDPA deference.   Applying the look-through presumption of Wilson, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.   The Court find the state court's adjudication of these claims is neither contrary to or an unreasonable application of Strickland or based on an unreasonable determination of the facts.   As such, Petitioner is not entitled to habeas relief on grounds thirteen and fourteen.

Accordingly, it is now

42

**ORDERED AND ADJUDGED:**

1.     The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

2.     This action is **DISMISSED WITH PREJUDICE**.

3.     The **Clerk** shall enter judgment accordingly and close this case.

4.     If Petitioner appeals the denial of his Petition (Doc. 1), **the Court denies a certificate of appealability**.[7]   Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.   Such termination shall serve as a denial of the motion.

    **DONE AND ORDERED** at Jacksonville, Florida, this 3rd day of November, 2022.

_____
BRIAN J. DAVIS
United States District Judge

---

[7] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).   Upon due consideration, this Court will deny a certificate of appealability.

sa 11/1
c:
Karla Davis
Counsel of Record